UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DONALD J. CHRISTENSEN, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | No. CV-08-3035-CI <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 21, 24.) Attorney D. James Tree represents Donald Christensen (Plaintiff); Special Assistant United States Attorney Richard M. Rodriquez represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment, and remands the matter for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff filed for disability benefits (DIB) on May 27, 2004, alleging disability due to a disc degenerative disease, left shoulder surgery and attendant pain, with an onset date of April 20, 2004. (Tr. 65, 69.) His claim was denied initially and on reconsideration. Plaintiff requested a hearing before an

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

administrative law judge (ALJ), which was held on October 18, 2006, before ALJ Catherine R. Lazuran. (Tr. 542-78.) Plaintiff, who was represented by counsel, and vocational expert Patricia Ayerza (VE) testified. The ALJ denied benefits on November 21, 2006, and the Appeals Council denied review. (Tr. 5-7, 14-24.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the alleged onset date, Plaintiff was 49 years old, married and had one child. He had completed 11th grade and did not obtain a high school equivalency degree. (Tr. 75, 545-46.) He had a myocardial infarction with stent placement in March 2003. (Tr. 16.) Plaintiff has long history of past work in heavy industries as a diesel mechanic, logger, and construction worker. (Tr. 546-48.) As a diesel mechanic, he was a lead worker, supervising three people. (Tr. 70.) He left his last job as a diesel mechanic in 2004, after degenerative joint disease in his back and left shoulder precluded him from doing his mechanic work. (Tr. 69-70, 181.) He was not successful at a lighter duty position at his workplace due to pain. (Tr. 69.) He received long term disability in 2004 and 2005; and at the time of the hearing, he had an open Workers Compensation case. (Tr. 550.)

At the hearing, Plaintiff testified he could lift 10 pounds occasionally, stand for 20 to 45 minutes at a time for a total of one hour in an 8-hour day, sit no more than 1.5 hours in an 8-hour day for 15 to 20 minutes at a time, and walk about 25 to 30 yards

for about 15 to 20 minutes. (Tr. 553.) He reported his spouse assisted him often with his daily activities. He stated he had been taking narcotic pain medication since 2003, medical marijuana for about two and one half years, depression medication, blood pressure medication, cholesterol medication, Flexeril (a muscle relaxant) for sleep, and Actos for his diabetes. (Tr. 555.) He testified he could not work due to chronic pain in his shoulder and lower back. (Tr. 552.)

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff's date of last insured for DIB purposes was December 31, 2008. (Tr. 16.) At step one, ALJ Lazuran found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.*) At step two, she found Plaintiff had severe impairments of "degenerative disc disease of the lumbar spine with mild stenosis; degenerative joint disease of the left shoulder; a history of myocardial infarction; and diabetes." (*Id.*) The ALJ determined at step three Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 17.) At step four, she determined Plaintiff had the residual functional capacity (RFC) "to perform sedentary exertion work" with several non-exertional limitations. (Tr. 17.) She found Plaintiff's statements regarding the extent of his limitations and severity of his symptoms were not entirely credible. (Tr. 18.) After a detailed summary of the medical evidence, the ALJ concluded Plaintiff could not perform his past relevant work. (Tr. 23.) At step five, the ALJ took vocational expert testimony

and found there were other jobs in the national economy that Plaintiff could perform. She then determined Plaintiff was not under a "disability" as defined by the Social Security Act. (Tr. 23-24.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when she: (1) did not include obesity and sleep apnea in the step two analysis; (2) improperly rejected treating source opinions and Plaintiff's testimony; and (3) failed to meet her step five burden. (Ct. Rec. 22 at 10.) Plaintiff contends at a minimum, remand is necessary for a new step five analysis.

**DISCUSSION**

In disability proceedings, the claimant has the burden of proof at steps one through four. However, an ALJ has a duty to develop the record if there is ambiguous evidence or when the record is inadequate for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 4509-60 (9th Cir 2001). At step five, the burden of proof shifts to the Commissioner to show there is a significant number of jobs in the national economy that Plaintiff can still perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). The ALJ may rely on vocational expert testimony if the hypothetical presented to the expert includes all functional limitations supported by the record and found credible by the ALJ. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the ALJ found Plaintiff was not able to perform his past jobs which were classified in the *Dictionary of Occupational Titles* as medium to heavy level work. (Tr. 571.) She found he had the following RFC to perform sedentary work, stating:

> "Sedentary exertion work" involves sitting and occasional walking and standing; lifting no more than 10 pounds at a time, and occasional lifting or carrying articles like docket files, ledgers and small tools. Additionally, he

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

>has non-exertional limitations that significantly impede his ability to meet the demands of work other than strength demands. . . . He is able to stand and walk two hours in an eight-hour workday. He is able to sit six hours in an eight-hour workday. He needs an option to sit or stand. He is limited to occasionally climb, stoop, crouch, crawl, and reach shoulder level or above. He must avoid concentrated exposure to hazards.

(Tr. 17.)[1]

In support of this determination, the ALJ summarized the medical evidence, including the opinions rendered by Plaintiff's treating orthopedic specialists, Dr. James Nelson and Dr. Stephen Brenneke, and his primary care physician, Dr. Constance Serra. (Tr. 18-23.) The ALJ noted that there was some inconsistency in the treating providers' recommendations regarding the appropriate level of work given Plaintiff's documented shoulder and back degeneration. Specifically, she found that in November 2004, and February and March 2005, Dr. Brenneke opined Plaintiff had the RFC for light exertion work with certain exertional abilities that exceeded the capacity for light work. (Tr. 21.) This contrasts with her finding that in August 2004, and March 2005, Dr. Brenneke opined Plaintiff would be restricted to sedentary exertion "because of his left shoulder/arm sprain and left rotator cuff injury," and "'no significant lifting and repetitive use' with his left shoulder/arm." (Tr. 22; *see also* Tr. 118, 147.)

When discussing Dr. Nelson's reports, the ALJ noted Dr. Nelson recommended Plaintiff stop working as a diesel mechanic in 2004,

---

[1] According to the Commissioner's policy ruling, "occasional" means very little, up to one third of the time (about two hours of an eight hour work day). *SSR* 83-10.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

because of his degenerative disease, but was "not sure that [Plaintiff] is totally disabled from all occupations." (Tr. 20, 381.) Further, the ALJ found Dr. Nelson was "vague" as to his exertional ability to sit. (*Id*.) She also found that Dr. Nelson opined Plaintiff could no longer do diesel mechanic work, and probably could not sit for a prolonged time. (*Id*.) However, as noted by the ALJ, Dr. Nelson gave no opinion as to other occupations that might be performed, and he did not specify exertional limitations. (Tr. 20.) Nonetheless, based on Dr. Nelson's chart notes, the ALJ found "the claimant is not seen as disabled from all occupations." (*Id*.) This conflicts with Dr. Serra's opinion that Plaintiff was unable to sustain full time work due to degenerative joint disease and chronic pain. (Tr. 22, 487-92.) The ALJ found Dr. Serra's limitations "unsubstantiated" and inconsistent with the conservative treatment given and "limited findings and symptoms."[2] (Tr. 22.) She rejected Dr. Serra's opinions in favor of the inconsistent and often unclear limitations assessed by Drs. Nelson and Brenneke, as well as the RFC assessment by non-examining physician Charles Wolfe, M.D. (*Id*.) Dr. Wolfe's October 2004 report was based on a review of records from Dr. Brenneke and Dr. Nelson.

---

[2] It is noted on independent review that although Dr. Brenneke did not recommend more invasive surgical treatment in spite of significant degenerative problems in Plaintiff's left shoulder, he reported Plaintiff's past chondroplasty (reshaping the joint surface) was "as good as we can do." (Tr. 394.) He did, however, consider full shoulder implant an option for the future when Plaintiff's shoulder deteriorated. (*Id*.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

It does not appear Dr. Wolfe considered Dr. Serra's records in his review. (Tr. 485.)

The record also includes an October 12, 2004, physical capacities evaluation (PCE) by Richard Miller, physical therapist. Mr. Miller conducted a comprehensive four-hour examination with detailed clinical findings based on exertional and non-exertional tests. (Tr. 470-73.) He assessed Plaintiff's physical capacities as follows: ability to lift a maximum of 5 pounds, push/pull a maximum of 20 pounds, sit for one half hour to 2 hours in an 8-hour day, stand for one half hour for 2 hours in an 8-hour day, walk for one quarter of an hour to one hour in an 8-hour day. (Tr. 472.) Significant postural limitations, based on actual strength testing, included a complete inability to reach overhead with either upper extremity. (Tr. 471, 472.) Mr. Miller concluded Plaintiff was limited to sedentary work with no reaching away from the body or overhead, and required the ability to change positions frequently. (Tr. 472.) Mr. Miller found Plaintiff's symptoms and limitations consistent with his observations, and tests for "worker reliability" appeared valid. (Tr. 473.)

Nonetheless, the ALJ gave little weight to this report because Mr. Miller "is not a medically accepted source" under the Regulations. (Tr. 21.) This finding is based on legal error. By definition, Mr. Miller is an "other source" under the Regulations, whose opinions must be considered by the ALJ, and may be rejected only for reasons "germane" to the source. 20 C.F.R. § 404.1513(d); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Although, under the Regulations, other sources cannot establish a medically

determinable impairment, the weight given to their opinions must be evaluated on the basis of their qualifications, how consistent their opinions are with the other evidence, the amount of evidence provided in support of their opinions and whether the other source is "has a specialty or area of expertise related to the individual's impairment." *SSR* 06-03p. Here, Mr. Miller is a licensed physical therapist with expertise in physical capacities' evaluations. His opinions are supported by a full report with objective clinical testing results. (Tr. 471-73.) Further, as indicated by the ALJ in her decision, Dr. Brenneke possibly relied on Mr. Miller's PCE in his opinions that Plaintiff was restricted to sedentary work and should do no "significant lifting and repetitive use" with his left shoulder and arm . (Tr. 21.) It is also clear from the record that Dr. Serra relied on Mr. Miller's assessment.[3] (Tr. 525.) The ALJ did not give a legally sufficient reason for rejecting Mr. Miller's detailed findings in the PCE. Because the opinions upon which treating sources relied in their opinions were improperly rejected by the ALJ, the ALJ's findings are not based on substantial evidence. Indeed, within the record, and in the ALJ's decision,

---

[3] At the hearing, the ALJ referenced a physical capacities report ordered by Dr. Serra in August 2005. (Tr. 568.) This appears to be the RFC Questionnaire completed by Dr. Serra on or about August 24, 2005. (Tr. 487.) However, Dr. Serra noted she used Mr. Miller's PCE results to complete a RFC questionnaire. (Tr. 525.) On remand, a new consultative PCE by an acceptable medical source should be ordered to clear up ambiguity and provide substantial evidence for limitations assessed by the ALJ.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

there are multiple conflicting opinions that Plaintiff could do light work, sedentary work, or no sustained work; these medical opinions are ambiguous at best.

The ALJ acknowledged this ambiguity during the hearing, when she presented hypothetical questions to the VE. The hypothetical question posed to the vocational expert must set forth all the claimant's limitations and restrictions. *Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir. 1989) (*citing Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988)). These limitations must be supported by the record. However, the ALJ stated at the hearing that the medical doctors were "vague" and did not explain fully certain limitations propounded in the hypothetical. (Tr. 574-75.) Further, the hypothetical limitations upon which the VE's testimony is based are not consistent with the ALJ's step four RFC determination that Plaintiff could perform "sedentary exertion work" and later findings that he was restricted to "less than sedentary exertion." (Tr. 23.) The first hypothetical individual was able to "lift 20 pounds occasionally and 10 pounds frequently, can stand and walk 6 out of 8 hours and sit about 6 of 8 hours, can occasionally climb a ladder, rope or scaffold, can occasionally stoop, crouch; occasionally reach to shoulder level and above." (Tr. 573.) The VE assumed the individual would need a sit/stand option and identified light jobs the individual could perform. (Tr. 573-74.) Thereafter, the ALJ added a restriction of no significant lifting or repetitive use of his left arm (indicating this was not explained too much by the physician), and then speculated as to the doctor's meaning in his opinion that Plaintiff had "14 percent permanent partial impairment," commenting, without basis, that it did not sound "all

that bad." (Tr. 575.) Based on this information, the VE testified there were 800 light jobs and 730 sedentary jobs in the regional economy. She testified the sit/stand accommodation restricted the number of jobs available. (Tr. 576.)

Although the ALJ made a general inquiry as to whether some of the jobs could be performed at the sedentary level, the VE's response does not clear up the ambiguity in the limitations propounded, most significantly the restrictions on upper extremity lifting and reaching. Further, the medical evidence in the record is ambiguous as to what the Plaintiff is capable of doing. Indeed, it is not certain that a "reasonable mind" would find the evidence in this record supports a conclusion of "not disabled." *See Richardson*, 402 U.S. at 401 (discussing the statutory standard of "substantial evidence"). Because the ALJ refused to give weight the PCE by Mr. Miller, and there is no other adequate capacities evaluation submitted, the ALJ had a duty to order an additional consultative examination by an orthopedic specialist or other acceptable medical source to clear up the ambiguities. Also, although not required, medical expert testimony may have assisted her in understanding the doctors' reports. *See, e.g.,* 20 C.F.R. § 404.1527(f)(2)(iii); *Andrews*, 53 F.3d at 1041; Tr. 575.) Because the VE testimony is not based on substantial evidence, the Commissioner did not meet his burden at step five.

Where the record is not fully developed, remand for additional proceedings is appropriate. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Here, the record is ambiguous and additional evidence is necessary to properly evaluate the case. On remand, the Commissioner will obtain additional evidence, including but not

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

limited to a physical capacities examination by an acceptable medical source, to assess Plaintiff's exertional and non-exertional limitations stemming from his established severe impairments.[4] Plaintiff may submit additional evidence. Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 21)** is **GRANTED**. This matter is remanded to the Commissioner for additional proceedings pursuant to 42 U.S.C. §405(g), consistent with the decision above;

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 24)** is **DENIED;**

3.   An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED May 5, 2009.

                    S/ CYNTHIA IMBROGNO
                 UNITED STATES MAGISTRATE JUDGE

---

[4] Because the new examination and other evidence which may be submitted on remand will require a new hearing and findings by the Commissioner, the court declines to address the step two and credibility issues raised by Plaintiff. However, it is noted on review that Dr. Nelson observed Plaintiff had no compliance issues with regard to Plaintiff's narcotic regime and no treating or examining doctor provided expressed concerns regarding Plaintiff's self-report or medication use. (Tr. 507.)